IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES GODFREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-455-SMY-RJD |
| | ) |
| THOMAS SPILLER, et al., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Charles Godfrey, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Specifically, Plaintiff alleges that the soy diet and "two-meal-per-day" brunch program at Pinckneyville caused him serious harm. Following threshold review, Plaintiff proceeds on the following Counts:

**Count 1:** Eighth Amendment claim against Defendants Spiller, Bates, and Bailey, in their individual capacities only, for endangering Plaintiff's health by serving him a soy diet.

**Count 2:** Eighth Amendment claim against Defendants Spiller, Bates, and Bailey, in their individual capacities only, for endangering Plaintiff's health by serving him a nutritionally inadequate diet consisting of 1,600 calories per day.

This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 75). Plaintiff filed a Response (Doc. 77). For the following reasons, Defendant's motion is **GRANTED**.

## Factual Background

On February 11, 2012, Pinckneyville launched a pilot program shifting from a three-meal-per-day food service to a two-meal-per-day on weekends and holidays (Doc. 76-1 at 70). On August 12, 2013, Pinckneyville implemented the two-meal-per-day program seven days a week (Id). Defendant Spiller was employed by IDOC as the Warden at Pinckneyville from October 2013 to June 2015 (Id. at 82).

Defendant Bailey was employed by IDOC as the Food Service Administrator from August 16, 2002 to May 31, 2017 (Id. at 69). Bailey formulated the master diets, including menus, portions, and serving sizes of food items, for both the three-meal-per-day food service, and the two-meal-per-day food service (Id. at 70). Defendant Bates was employed by IDOC as the Deputy Director from December 1, 2001 to June 7, 2013 (Id. at 81). Bates attended meetings regarding the implementation of a pilot brunch program at Pinckneyville with Bailey (Doc. 77-5 at 5). Bates and Spiller relied on the menus set and approved by the administration in Springfield (Doc. 76-1 at 81-82).

Charles Godfrey was transferred to Pinckneyville from Vienna Correctional Center in November 2014 (Doc. 76-1 at 11). Godfrey alleges he weighed approximately 223 pounds when he entered Pinckneyville (Id. at 64) and that he lost weight due to the reduced amount of food in the two-meal-per-day program (Id. at 61). The brunch program was discontinued on December 1, 2015 (Id. at 70). When Godfrey resumed his three-meals-per-day, he gained weight up to 216 pounds (Id. at 76). Godfrey currently weights 192 (Id. at 61).

Regarding the soy program, Godfrey worked in dietary and overheard a supervisor instructing inmates to substitute soy for meat because the State is on a budget (Id. at 34-35). Godfrey claims that IDOC did not use any meat, only soy substitute (Id.). He alleges he suffered frequent constipation, headaches, diarrhea, and "brain fog" because of the soy (Id. at 45). As a

result, he saw the doctor who gave him Colace and fiber pills (Id. at 47). On February 9, 2016, Godfrey was diagnosed with an inguinal hernia (Doc. 77-2). He alleges the constipation caused or contributed to his painful hernia (Doc. 77 at 4). From February 2016 until September 2016, Godfrey did not receive a hernia support belt to alleviate his pain (Docs. 77-3, 77-4).

Any offender in need of a specific diet due to medical reasons is permitted to be prescribed a therapeutic diet by his physician (Id. at 70-71). Godfrey alleges that he tried to speak to Defendant Spiller in order to request a specific diet, but Spiller ignored his request to speak to him (76-1 at 48-49).

## **Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## *Count 1 – Soy Diet*

Although the Eighth Amendment prohibits "cruel and unusual punishment" of an inmate, not all prison conditions trigger Eighth Amendment scrutiny. *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Only conditions of confinement that deny an inmate of "basic human needs" or "the minimal civilized measure of life's necessities," such as food, medical care, or sanitation, violates the Eighth Amendment. *Id.*; *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court instructed courts evaluating claims of unconstitutional conditions of confinement to consider: (1) whether the defendant prison officials acted with the requisite state of mind (the subjective component) and (2) whether the alleged deprivations were sufficiently serious to rise to the level of a constitutional violation (the objective component). Thus, to establish his Eighth Amendment claim, Plaintiff must show that he was subjected to conditions that denied him "the minimal civilized measure of life's necessities" *and* that Defendants acted with a culpable state of mind. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (other citations omitted)).

With regard to the objective component, while the Eighth Amendment entitles prisoners to humane conditions of confinement that provide for their "basic human needs", *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), it does not require prison officials to provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTeela*, 255 F.3d 470, 472 (7th Cir. 2011) (citations omitted). Notably, a number of

courts have recently rejected claims by inmates that soy-rich diets put them at a serious risk of harm. For example, in *Harris v. Brown*, the court noted that "society today simply does not see soy protein as a risk to the general population, much less a serious risk." 07-CV-3225, 2014 WL 4948229, *4 (C.D. Ill. September 30, 2014). The court pointed out that the federal government still allows food manufacturers to claim health benefits on food labels for foods containing at least 6.25 grams of soy protein per serving. *Id.* at *4 (citation omitted). And after considering various expert reports regarding the health effects of soy, the *Harris* court concluded that "[t]oday, serving soy to prisoners could not be considered cruel and unusual punishment as a matter of law" and the "most than can be said is that the safety of soy is a topic of current debate and study and has been for some time." *Id.* at *4-5. *See also Ruiz v. Bailey*, No. 17-cv-00107-SMY, 2017 WL 2645630 at *3–4 (S.D. Ill. June 20, 2017); *Riley-El v. Godinez*, No. 13 C 8656, 2013 WL 4572322 at *4 (N.D. Ill. July 27, 2015); *Munson v. Gaetz*, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013); *Smith v. Rector*, No. 13-cv-00837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013); *Adams v. Talbor*, No. 12-2221, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013).

This Court finds the reasoning in *Harris* persuasive. While Plaintiff asserts that the soy in his diet caused him to suffer from constipation, diarrhea, headaches and "brain fog," the Court finds that the objective component has not been met, particularly in light of the fact that there is no evidence as to what amount of soy Plaintiff actually consumed, no evidence that Plaintiff's complaints were caused by the ingestion of soy, and no evidence he suffers from a soy allergy or has a medical condition for which soy is contraindicated.

Moreover, the Court finds Plaintiff's assertion that the high soy content of the diet is directly related to his inguinal hernia disingenuous. Plaintiff cites to his medical record as evidence that he complained of the hernia in February of 2016, but ignores the statement in the

cited record that he self-reported he had suffered from a hernia previously (Doc. 77-2 at 2). For these reasons, Defendants are entitled to judgment as a matter of law as to Count 1.

### *Count II – Brunch Program*

An inmate who is deprived of adequate nutrition, a basic human need, may be able to sustain an Eighth Amendment claim. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *Farmer v. Brennan,* 511 U.S. 825, 837 (1970); *James v. Milwaukee Cnty.,* 956 F.2d 696, 699 (7th Cir. 1992). However, the denial of food is not a *per se* violation of the Eighth Amendment, and the Court "must assess the amount and duration of the deprivation." *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter,* 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir.1998) (serving inmates only two meals per day may satisfy the Eighth Amendment if the meals are nutritionally adequate); *Cunningham v. Jones,* 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand,* 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned ... of sufficient food to maintain normal health.").

Plaintiff alleges the two meals that were served at Pinckneyville only consisted of 1600-1800 calories and that as a result, he suffered from hunger pains between meals and weight loss. Plaintiff's complaints of hunger pains between meals are not sufficient evidence of harm, much less serious harm. Further, Plaintiff does not allege that the lack of meals was the only cause of his weight loss. Plaintiff testified he weighed 238 pounds at Vienna Correctional Center but that he had to lose weight to play basketball and was down to 223 pounds when he transferred to Pinckneyville. He alleges that because of the Pinckneyville two-meal-per-day policy, over the

course of a year he dropped down to "200 some pounds" and that when he started back on three meals a day, his weight went back up to approximately 216 pounds.

There is no evidence that Plaintiff's weight loss put his health at risk in anyway. In fact, Plaintiff testified that after gaining weight back eating three meals a day, he now weighs 192 pounds. He has since lost weight because he injured his knee and wanted to lose weight because he felt "a little chubby." Plaintiff's allegations of hunger pains and approximately twenty pounds of weight loss over the course of a year without any adverse health effects are not significant enough to show objectively serious harm. Moreover, there is no evidence that the meals provided were nutritionally inadequate. As such, Defendants are also entitled to judgment as to Count 2.[1]

## **Conclusion**

Accordingly, Defendants' Motion for Summary Judgment (Doc. 75) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: April 9, 2018**

> **s/ Staci M. Yandle**
> **STACI M. YANDLE**
> **United States District Judge**

---

[1] Defendants also assert that they are entitled to qualified immunity on Godfrey's claims. Because the Court has concluded that the evidence does not create a genuine issue of material fact as to whether Defendants violated Godfrey's Eighth Amendment rights, it will not address the issue of qualified immunity.